UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVIE L. JONES, JR.,

        Plaintiff,                        Case No. 1:14-cv-391

v.                                             Honorable Janet T. Neff

ELISIA HARDIMAN et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendant MDOC. Additionally, the Court will dismiss Plaintiff's claims for violation of his right to access the courts and his due process rights for failure to state a claim upon which relief can be granted. The Court will serve the amended complaint against Defendants Hardiman, Davis, Simmons and Jefferson.

**Discussion**

    I.        Factual allegations

Plaintiff Davie L. Jones, Jr. presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility although the events about which he complains took place while he was housed at the Muskegon Correctional Facility (MCF). Plaintiff names the MDOC as a Defendant, as well as the following MCF personnel: Librarian Elisia Hardiman; Inspector Paul Davis; Assistant Resident Unit Manager (ARUM) Tiffany Jefferson and Grievance Coordinator Lashea Simmons.

In January 2013, Plaintiff needed to file a motion with the Sixth Circuit Court of Appeals regarding his criminal appeal. In connection with this motion, Plaintiff needed to obtain copies of certain documents. On January 4, 2013, Officer Abbatoy gave Plaintiff a pass to drop off the documents he needed copied. On January 6, 2013, Officer Abbatoy called Defendant Hardiman to check on Plaintiff's copy request. Defendant Hardiman told Officer Abbatoy that she had three days to decide whether to make Plaintiff's copies. On January 8, 2013, Plaintiff had still not received his copies. He spoke to Defendant Hardiman who "berate[d] and chastise[d]" him about having correctional officers call her regarding Plaintiff's copies and she told Plaintiff that it was her decision whether to make copies and that Plaintiff's "chances of getting copies [was] almost zero!" (Am. Compl., docket #6, Page ID#186.) Plaintiff responded that if he did not get his copies he would file a grievance because MCF operating procedures require that copies "be returned to prisoners within three business days." (*Id.*) Defendant Hardiman screamed at Plaintiff, "your copies aren't going to be made!" (*Id.*) Defendant Hardiman said that she would justify rejecting Plaintiff's copies due to his indigency. Plaintiff explained that MDOC Policy Directive 05.03.116 ¶L permitted

him to obtain a photocopy loan. Defendant Hardiman told Plaintiff that she would put him "on call" to pick up his legal materials. (*Id.*) When Plaintiff told Defendant Hardiman he could obtain a pass, she stated that she would not accept a pass from Plaintiff.

Plaintiff told ARUM Addis about Defendant Hardiman's actions. ARUM Addis told Plaintiff he would see what he could do. Plaintiff wrote a grievance against Defendant Hardiman and wrote to the Warden and Deputy Warden as well.

On January 9, 2013, Defendant Hardiman returned Plaintiff's exhibits, without copying them, and gave Plaintiff a copy of her written denial. When Plaintiff tried to talk to Defendant Hardiman, she threatened to write a misconduct report. Defendant Hardiman told Plaintiff "I don't appreciate all the calls, it's irritating and upsetting me!" (*Id.* at Page ID#187.) When Plaintiff returned to his housing unit he showed his exhibits to ARUM Addis who indicated that they should have been copied. ARUM Addis told Plaintiff to fill out another legal photocopy form so he could have copies made for Plaintiff. Plaintiff wrote another grievance against Defendant Hardiman.

On January 18, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "exhibitless motion." (*Id.*)

On January 23, 2013, Defendant Simmons rejected Plaintiff's second grievance against Defendant Hardiman claiming that it was a duplicate of the first grievance. Plaintiff alleges that the first grievance asserted "denial of access to courts" while the second grievance asserted "retaliation." (*Id.*)

On February 19, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "application without me having the opportunity to amend it with my exhibits." (*Id.*)

On February 26, 2013, Plaintiff submitted new legal exhibits to Defendant Hardiman to copy, including "court orders, notarized affidavits and trial transcript pages." (*Id.*) On February 26, 2013, Defendant Hardiman returned Plaintiff's exhibits without copying them, along with a written denial. When Plaintiff returned to his housing unit, he saw Warden Burt and showed her the exhibits Defendant Hardiman refused to copy. Warden Burt took Plaintiff's exhibits and told him that she would get them copied. That night, Plaintiff received a call to pick up his copies.

On March 1, 2013, while picking up the exhibits that Warden Burt had dropped off, Plaintiff attempted to drop off additional legal materials to be copied. When Plaintiff handed the items to Defendant Hardiman, she threw them back at Plaintiff, hitting him with them, and yelling "I am tired of you! I don't care if you get your court copies or not, because it's not my life!" (*Id.* at Page ID#188.) Plaintiff was shocked by Defendant Hardiman's actions and "collapsed from an anxiety induced panic attack." (*Id.*) Officer Cartwright radioed a distress call for assistance and helped Plaintiff off the floor and into a lobby area. Officer Stewart answered the distress call and escorted Plaintiff to an auditorium and then his housing unit. When Plaintiff returned to his unit, Officer Abbatoy noticed that Plaintiff was in distress so he escorted Plaintiff into ARUM Addis' office and prepared a R.O.B.E.R.T.A.[1] form which he submitted to mental health services. Plaintiff filed another grievance against Defendant Hardiman and wrote a letter of complaint to Warden Burt.

On March 3, 2013, Plaintiff met with Dr. Kristen Austin of prisoner mental health services.

---

[1] Plaintiff does not explain what he means by a "R.O.B.E.R.T.A. form." Presumably, Plaintiff means the "psychiatric referral form, called a 'Roberta-R' (which stands for reasoning, orientation, behavior, emotions, recall-and-memory, talk, appearance and relationships)." *Clark-Murphy v. Foreback*, 439 F.3d 280, 283 (6th Cir. 2006).

On March 25, 2013, Defendant Davis called Plaintiff to his office and reprimanded him for filing grievances stating, "Your grievances waste my time and will only get you transferred!" (*Id.*) Plaintiff told Davis that he did not want to be transferred because he received frequent visits from his family who would not be able to visit him if he were moved to a different facility. Plaintiff explained that he was just trying to obtain copies and that Defendant Hardiman was refusing to make copies for him. Defendant Davis told Plaintiff, "If you don't want to be transferred, you'd better stop grieving and complaining!" (*Id.* at Page ID#189.) Plaintiff filed a grievance against Defendant Davis.

On March 27, 2013, Plaintiff learned that he was going to be transferred. Plaintiff asked Defendant Jefferson to find out why he was being transferred. Plaintiff later learned that his transfer was cancelled. When he thanked Defendant Jefferson, she said "I didn't stop your ride-out, but I'm moving you out of my unit because you're crazy, you're O.P.T. (out-patient treatment). You're a mental patient, stay away from me!" (*Id.*) Plaintiff asked Defendant Jefferson not to move him because he did not want to lose his job. Defendant Jefferson responded that Plaintiff "should of thought about that before all those grievances and complaints!" (*Id.*) Plaintiff responded that all he was trying to do was get "copies for court." (*Id.*) Defendant Jefferson told Plaintiff to "get away from me, I don't want you filing any of your bullshit grievances on me!" (*Id.*) Plaintiff spoke to Dr. Austin about what had happened with Defendant Jefferson. Dr. Austin told Plaintiff she would speak with Defendant Jefferson. Plaintiff filed a grievance against Defendant Jefferson.

Plaintiff alleges that he "fell into a deeper state of depression which contributed to weight loss, restlessness, with episodes of isolation to avoid staff taunting, and anxiety." Plaintiff's

work supervisor Officer Pryslek noticed Plaintiff's "fragile mental state" and prepared another R.O.B.E.R.T.A. form.  (*Id.*)

On March 29, 2013, Plaintiff was moved to another housing unit.  As a result, he lost his job.  Because Plaintiff was moved without having received a misconduct report and because he lost his job, Plaintiff filed a grievance against Defendant Jefferson.  After Plaintiff was moved, he asked Defendant Davis why he was moved. Defendant Davis responded "you escaped that transfer, so be happy!"  (*Id.* at Page ID#190.)  Defendant Davis also stated that he was "working on behalf of himself, Hardiman, Jefferson and Simmons to make sure the next transfer wasn't cancelled because he has the last say about who stays and goes."  (*Id.*)  Plaintiff told Defendant Davis that he did not want to leave Muskegon because he received visits from his family and because he had just started treatment with prisoner mental health services."  (*Id.*)  That same day, Plaintiff received Defendant Simmons' grievance rejection alleging that Plaintiff had filed a grievance while on "modified access."  (*Id.*)  However, Plaintiff was not on modified access.

On April 9, 2013, Plaintiff spoke to Defendant Simmons while on the prison yard. Plaintiff asked her why his grievance was rejected. Defendant Simmons said "I am going to make sure any investigation or lawsuit doesn't happen and was dismissed.  You cannot sue if your grievances are rejected."  (*Id.*)

On April 30, 2013, Plaintiff received a second grievance rejection.  Plaintiff filed grievances against all Defendants and wrote to MDOC Internal Affairs regarding Defendants' conduct.

On May 16, 2013, Plaintiff was transferred from MCF to the Carson City Correctional Facility.  Plaintiff filed a grievance regarding the transfer.  Defendant Simmons did not

process Plaintiff's grievance until July 22, 2013. Plaintiff filed a grievance regarding Defendant Simmons' delay in processing his transfer grievance. Plaintiff alleges that because of Defendants Simmons delay, his Step II grievance was dismissed as untimely.

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

II.     Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Access to Courts

Plaintiff alleges that Defendant Hardiman interfered with his ability to access the courts by refusing to copy exhibits which Plaintiff needed in order to properly file legal documents. Plaintiff alleges that on January 18, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "exhibitless motion." (Am. Compl., docket #6, Page ID#187.)  Additionally, on February 19, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "application without me having the opportunity to amend it with my exhibits."  (*Id.*)

Plaintiff also alleges that Defendant Simmons interfered with his ability to access the courts by rejecting his grievances.  Defendant Simmons informed Plaintiff that "I am going to make sure any investigation or lawsuit doesn't happen and was dismissed.  You cannot sue if your grievances are rejected."  (*Id.* at Page ID#190.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that

may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff has failed to sufficiently allege that he suffered an actual injury. Plaintiff must establish that Defendant Hardiman's failure to copy his exhibits "hindered" his efforts to pursue a "nonfrivolous legal claim," *Lewis*, 518 U.S. at 351-53. As a result, to properly state a claim for interference with access to the courts, Plaintiff must set forth the nature of the claims he raised in the Sixth Circuit Court of Appeals. Plaintiff alleges that he had a motion and an application dismissed by the Sixth Circuit Court of Appeals because neither document had exhibits due to

Defendant Hardiman's failure to copy the exhibits. However, Plaintiff entirely fails to set forth the nature of the legal claims addressed in his motion and application. Without any allegations to suggest that Plaintiff suffered an actual injury to a nonfrivolous legal claim as a result of Defendant Hardiman's conduct, Plaintiff cannot state an claim for interference with access to the court against Defendant Hardiman.

Plaintiff fares no better with respect to his claim against Defendant Simmons. Defendant Simmons' comment that Plaintiff could not sue if his grievances were rejected is simply false. Even if Plaintiff was improperly prevented from pursuing a grievance, he may still file suit. The requirement that Plaintiff exhaust his administrative remedies prior to initiating legal action applies only as to those administrative remedies that are available. See 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied the right to complete the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Napier v. Laurel Cnty., Ky.*, 636 F. 3d 218, 223-24 (6th Cir. 2011) (acknowledging that prison may render administrative remedies unavailable); *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable'"); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) ("inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies"). Thus, Defendant Simmons could not thwart Plaintiff's effort to access the court simply by wrongfully rejecting his grievances. Because Defendant Simmons' wrongful rejection of his grievance would not affect his ability to file a civil rights actions, Plaintiff has not alleged that he "suffered an actual litigation related injury or legal prejudice." *Thomas v. Rochell*, 47 F. App'x 315,

317 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349–51); *see also, Colvin v. Schaublin*, 113 F. App'x 655, 658 (6th Cir. 2004) ("plaintiff must prove that defendants are personally responsible for the alleged unconstitutional actions that caused his injury"). Consequently, he fails to state a claim for interference with his access to the courts.

### B. Retaliation

Plaintiff alleges that he requested that Defendant Hardiman make copies of legal exhibits he intended to file. Defendant Hardiman refused to make the copies. Plaintiff told Defendant Hardiman that he would file a grievance against her for not making his copies as required by MCF operating procedure. Defendant Hardiman responded "your copies aren't going to be made!" and explained that she would justify not making Plaintiff's copies due to his indigency. (Am. Compl., docket #6, Page ID#186.)

Plaintiff alleges that Defendant Davis reprimanded him for filing grievances, stating "your grievances waste my time and will only get you transferred!" (Am. Compl., docket #6, Page ID#188.) Plaintiff explained to Defendant Davis that he did not want to be transferred because his family members frequently visit him at MCF and they could not visit him if he were moved away. Defendant Davis responded that if Plaintiff did not want to be transferred he "better stop grieving and complaining!" (*Id.* at Page ID#189.)

Plaintiff alleges that Defendant Jefferson told him she wanted to get him out of her unit because he was a "mental patient." (*Id.*) When Plaintiff asked Defendant Jefferson not to move him because he did not want to lose his job, she said Plaintiff "should have through about that before all those grievances and complaints!" (*Id.*)

Plaintiff alleges that when he asked Defendant Simmons why she rejected one of his grievances, she replied, "I am going to make sure any investigation or lawsuit doesn't happen and was dismissed. You cannot sue if your grievances are rejected!" (*Id.* at Page ID#190.)

At this juncture, Plaintiff's allegations warrant service of the complaint against Defendants Hardiman, Davis, Jefferson and Simmons.

### C.     Due Process

Plaintiff appears to assert that Defendant Simmons' rejection of his grievances and failure to timely process his grievances violated his due process rights.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Simmons' conduct did not deprive him of due process. Consequently, Plaintiff fails to state a due process claim against Defendant Simmons.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant MDOC will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) because it is immune from suit. Additionally, Plaintiff's claims for violation of his right to access the courts and his due process rights will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the amended complaint against Defendants Hardiman, Davis, Simmons and Jefferson with respect to Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.

Dated:  June 24, 2014                         /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge