UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVIE JONES, JR.,

                    Plaintiff,                              Hon. Janet T. Neff

v.                                                          Case No. 1:14-CV-391

ELISIA HARDIMAN, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss and Motion for Summary Judgment, (dkt. #21), and Plaintiff's Motion for Summary Judgment, (dkt. #23). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendants' motion be **granted**, and this action **dismissed**.


## BACKGROUND

Plaintiff Davie L. Jones, Jr. presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) whereas the events giving rise to this action occurred while Plaintiff was housed at the Muskegon Correctional Facility (MCF). Plaintiff initiated this action against the MDOC as well as the following MCF personnel: Librarian Elisia Hardiman; Inspector Paul Davis; Assistant Resident Unit Manager (ARUM) Tiffany Jefferson; and Grievance Coordinator Lashea Simmons. The following allegations are contained in Plaintiff's Amended Complaint.

In January 2013, Plaintiff needed to file a court pleading regarding his criminal appeal. In connection with such, Plaintiff needed to obtain copies of certain documents. On January 4, 2013, Officer Abbatoy gave Plaintiff a pass to drop off the documents he needed copied. On January 6, 2013, Officer Abbatoy contacted Defendant Hardiman to check on Plaintiff's copy request. Defendant Hardiman told Officer Abbatoy that she had three days to decide whether to make Plaintiff's copies.

On January 8, 2013, Plaintiff had still not received his copies at which point he spoke to Defendant Hardiman who "berate[d] and chastise[d]" him about having correctional officers call her regarding his copies. Hardiman told Plaintiff that it was her decision whether to make copies and that Plaintiff's "chances of getting copies [was] almost zero!" Plaintiff responded that if he did not get his copies he would file a grievance because MCF operating procedures require that copies "be returned to prisoners within three business days." Defendant Hardiman screamed at Plaintiff, "your copies aren't going to be made!" Defendant Hardiman said that she would justify rejecting Plaintiff's copies due to his indigency. Plaintiff explained that MDOC policy permitted him to obtain a loan to obtain photocopies. Defendant Hardiman told Plaintiff that she would put him "on call" to pick up his legal materials. When Plaintiff told Defendant Hardiman he could instead obtain a pass, she stated that she would not accept a pass from Plaintiff. Plaintiff told ARUM Addis about Defendant Hardiman's actions. ARUM Addis told Plaintiff he would see what he could do. Plaintiff wrote a grievance against Defendant Hardiman and wrote to the Warden and Deputy Warden as well.

On January 9, 2013, Defendant Hardiman returned Plaintiff's exhibits, without copying them, and gave Plaintiff a copy of her written denial. When Plaintiff tried to talk to Defendant Hardiman, she threatened to write a misconduct report. Defendant Hardiman told Plaintiff "I don't appreciate all the calls, it's irritating and upsetting me!" When Plaintiff returned to his housing unit he

showed his exhibits to ARUM Addis who indicated that they should have been copied. ARUM Addis told Plaintiff to fill out another legal photocopy request form. Plaintiff wrote another grievance against Defendant Hardiman. On January 18, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "exhibitless motion."

On January 23, 2013, Defendant Simmons rejected Plaintiff's second grievance against Defendant Hardiman claiming that it was a duplicate of the first grievance. Plaintiff alleges that the first grievance asserted "denial of access to courts" while the second grievance asserted "retaliation." On February 19, 2013, the Sixth Circuit Court of Appeals denied Plaintiff's "application without me having the opportunity to amend it with my exhibits."

On February 26, 2013, Plaintiff submitted new legal exhibits to Defendant Hardiman to copy, including "court orders, notarized affidavits and trial transcript pages." On February 26, 2013, Defendant Hardiman returned Plaintiff's exhibits without copying them, along with a written denial. When Plaintiff returned to his housing unit, he saw Warden Burt and showed her the exhibits Defendant Hardiman refused to copy. Warden Burt took Plaintiff's exhibits and told him that she would get them copied.

On March 1, 2013, while picking up the exhibits that Warden Burt had dropped off, Plaintiff attempted to drop off additional legal materials to be copied. When Plaintiff handed the items to Defendant Hardiman, she threw them back at Plaintiff and yelled, "I am tired of you! I don't care if you get your court copies or not, because it's not my life!" Plaintiff was shocked by Defendant Hardiman's actions and "collapsed from an anxiety induced panic attack." Officer Cartwright radioed a distress call for assistance and helped Plaintiff off the floor and into a lobby area. Officer Stewart answered the distress call and escorted Plaintiff to an auditorium and then his housing unit. When

Plaintiff returned to his unit, Officer Abbatoy noticed that Plaintiff was in distress so he escorted Plaintiff into ARUM Addis' office and prepared a R.O.B.E.R.T.A.[1] form which he submitted to mental health services.  Plaintiff filed another grievance against Defendant Hardiman and wrote a letter of complaint to Warden Burt.  On March 3, 2013, Plaintiff met with Dr. Kristen Austin of prisoner mental health services.

On March 25, 2013, Defendant Davis called Plaintiff to his office and reprimanded him for filing grievances stating, "Your grievances waste my time and will only get you transferred!"  Plaintiff told Davis that he did not want to be transferred because he received frequent visits from his family who would not be able to visit him if he were moved to a different facility.  Plaintiff explained that he was just trying to obtain copies and that Defendant Hardiman was refusing to make copies for him.  Defendant Davis told Plaintiff, "If you don't want to be transferred, you'd better stop grieving and complaining!"  Plaintiff filed a grievance against Defendant Davis.

On March 27, 2013, Plaintiff learned that he was going to be transferred.  Plaintiff asked Defendant Jefferson to find out why he was being transferred.   Plaintiff later learned that his transfer was cancelled.  When he thanked Defendant Jefferson, she said "I didn't stop your ride-out, but I'm moving you out of my unit because you're crazy, you're O.P.T. (out-patient treatment).  You're a mental patient, stay away from me!"  Plaintiff asked Defendant Jefferson not to move him because he did not want to lose his job.  Defendant Jefferson responded that Plaintiff "should of thought about that before all those grievances and complaints!"  Plaintiff responded that all he was trying to do was get "copies for court."  Defendant Jefferson told Plaintiff to "get away from me, I don't want you filing any of your

---

[1] Plaintiff does not explain what he means by a "R.O.B.E.R.T.A. form."  Presumably, Plaintiff means the "psychiatric referral  form, called a 'Roberta-R' (which stands for reasoning, orientation, behavior, emotions, recall-and-memory, talk, appearance and relationships)."  *Clark-Murphy v. Foreback*, 439 F.3d 280, 283 (6th Cir. 2006).

bullshit grievances on me!"  Plaintiff spoke to Dr. Austin about what had happened with Defendant Jefferson.  Dr. Austin told Plaintiff she would speak with Defendant Jefferson.  Plaintiff filed a grievance against Defendant Jefferson.  Plaintiff then "fell into a deeper state of depression which contributed to weight loss, restlessness, with episodes of isolation to avoid staff taunting, and anxiety." Plaintiff's work supervisor Officer Pryslek noticed Plaintiff's "fragile mental state" and prepared another R.O.B.E.R.T.A. form.

On March 29, 2013, Plaintiff was moved to another housing unit.  As a result, he lost his job after which he filed a grievance against Defendant Jefferson.  Plaintiff later asked Defendant Davis why he was moved.  Davis responded "you escaped that transfer, so be happy!"  Defendant Davis also stated that he was "working on behalf of himself, Hardiman, Jefferson and Simmons to make sure the next transfer wasn't cancelled because he has the last say about who stays and goes."  Plaintiff told Defendant Davis that he did not want to leave Muskegon because he received visits from his family and because he had just started treatment with prisoner mental health services."  That same day, Plaintiff received Defendant Simmons' grievance rejection alleging that Plaintiff had filed a grievance while on "modified access."  Plaintiff was not on modified access.

On April 9, 2013, Plaintiff spoke to Defendant Simmons while on the prison yard. Plaintiff asked her why his grievance was rejected. Defendant Simmons said "I am going to make sure any investigation or lawsuit doesn't happen and was dismissed.  You cannot sue if your grievances are rejected."  On April 30, 2013, Plaintiff received a second grievance rejection.

On May 16, 2013, Plaintiff was transferred from the Muskegon Correctional Facility to the Carson City Correctional Facility.  Plaintiff filed a grievance regarding the transfer.  Defendant Simmons did not process Plaintiff's grievance until July 22, 2013.  Plaintiff filed a grievance regarding

Defendant Simmons' delay in processing his transfer grievance.  Plaintiff alleges that because of Defendants Simmons delay, his Step II grievance was dismissed as untimely.

On June 24, 2014, the Court dismissed Plaintiff's due process and denial of access to the courts claims.  (Dkt. #7-8).  The Court also dismissed all Plaintiff's claims against the MDOC.  (Dkt. #7-8).  Defendants Hardiman, Davis, Jefferson, and Simmons now move for relief as to Plaintiff's remaining claims.  Plaintiff has responded by likewise filing a motion for summary judgment.

## LEGAL STANDARD

I.       **Motion for Judgment on the Pleadings**

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A party seeking to dismiss a complaint for failure to state a claim on which relief may be granted may do so by filing a Rule 12(c) motion.  *See* Fed. R. Civ. P. 12(h)(2)(B).  Whether asserted under Rule 12(c) or 12(b)(6), the standard for dismissal for failure to state a claim is the same.

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's

liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).


II.          **Motion for Summary Judgment**

      Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a

genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary

judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty

v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**         **Retaliation**

Plaintiff alleges that Defendants each retaliated against him in different ways in response to certain protected activity in which he had engaged. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff

suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.  *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).  Defendants assert that Plaintiff's allegations fail to state a claim on which relief may be granted.  Defendants further assert that even if Plaintiff's allegations state a claim, relief is nevertheless warranted on the basis of qualified immunity.

### A.     Defendant Simmons

Plaintiff alleges that Simmons denied certain prison grievances for improper retaliatory reasons.  To constitute unlawful retaliation, the allegedly unlawful conduct must be sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct.  *See, e.g. Eby*, 481 F.3d at 440.  The mere denial of a prison grievance, however, does not constitute adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct.  *See, e.g., Burgos v. Canino*, 641 F.Supp.2d 443, 454-55 (E.D. Pa. 2009) ("[t]he mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"); *Alexander v. Fritch*, 2010 WL 1257709 at *18 (W.D. Pa., Mar. 26, 2010) (same); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("inconsequential actions" do not satisfy the "adverse action requirement").  Accordingly, the undersigned recommends that Defendant Simmons' motion to dismiss be granted and Plaintiff's motion for summary judgment be denied as to this claim.

B.      Defendants Jefferson and Davis

Plaintiff alleges that Davis threatened to have him transferred if he continued "grieving and complaining."  Plaintiff further alleges that soon thereafter Jefferson transferred him "to another housing unit" in retaliation for filing various grievances and complaints.  Defendants argue that they are entitled to relief because even taking as true Plaintiff's allegations such fails to demonstrate that Plaintiff suffered an adverse action sufficient to state a claim for retaliation.  It is well established that "routine inconveniences of prison life. . .do not constitute adverse action."  *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 503 (6th Cir., Apr. 13, 2011).  Thus, where an inmate is transferred from one facility to another, but does not experience "foreseeable consequences. . .that would inhibit [his] ability to access the courts," such does not constitute adverse action.  *Id.* (citation omitted).  Plaintiff has not alleged that he experienced, as a result of the transfer in question, any impairment of or prejudice to his ability to access the courts.  Accordingly, the undersigned recommends that Defendant Jefferson's and Defendant Davis' motions to dismiss be granted and Plaintiff's motion for summary judgment be denied as to these claims.

C.      Defendant Hardiman

Plaintiff alleges that Defendant Hardiman refused to make copies of various "legal exhibits" which Plaintiff asserts he needed to submit in support of legal action he was pursuing. Plaintiff's claim fails because Defendant's actions do not constitute adverse action and, moreover, because the evidence reveals that Defendant took the action in question for reasons unrelated to any protected conduct in which Plaintiff may have been engaged.

Pursuant to MDOC policy, when a prisoner claiming to be indigent requests copies of alleged legal material, he "may be required to present documentation (e.g., court rule, copy of the pleading) to show that requested copies are necessary." Michigan Department of Corrections Policy Directive 05.03.116 ¶¶ M-O. Plaintiff submitted with his complaint a copy of an exhibit which reveals that Hardiman refused Plaintiff's request for copies because Plaintiff failed to comply with this requirement. (Dkt. #1). Plaintiff has presented no evidence to the contrary. A decision by a prison official not to provide photocopies because of a failure by the prisoner to comply with a reasonable rule is not sufficient to deter a person of ordinary firmness from engaging in protected conduct.

With respect to causation, Plaintiff has failed to allege facts from which causation can be inferred. Moreover, the aforementioned exhibit demonstrates that Defendant Hardiman's actions were not motivated by Plaintiff's conduct, but were instead motivated by Plaintiff's failure to comply with a reasonable prison regulation. As Plaintiff has presented no evidence calling into question Hardiman's motivation as evidenced in the exhibit in question, Defendant is entitled to relief. *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).

In sum, Plaintiff's claim against Defendant Hardiman is subject to dismissal for failure to state a claim based upon Plaintiff's failure to allege facts from which a reasonable juror could conclude that Plaintiff suffered an adverse action. In the alternative, Defendant is entitled to summary judgment based upon evidence that she acted for reasons unrelated to Plaintiff's protected conduct. Accordingly, the undersigned recommends that Defendant Hardiman's motion to dismiss and motion for summary judgment both be granted and Plaintiff's motion for summary judgment be denied as to this claim.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion to Dismiss and Motion for Summary Judgment</u>, (dkt. #21), be **granted**; <u>Plaintiff's Motion for Summary Judgment</u>, (dkt. #23), be **denied**; and this action **dismissed**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  August 6, 2015                              /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge